Patricia KOZAL, a/k/a Patricia PARKER *v.*
STATE of Arkansas

CR 78-32                               573 S.W. 2d 323

Opinion delivered November 13, 1978
(Division I)
[Rehearing denied December 11, 1978.]

588

*Pearce & Robinson,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

GEORGE HOWARD, JR., Justice. This is an appeal from an order of the Washington County Circuit Court denying appellant's motion for a new trial based on an allegation of the insanity of appellant.

The essential facts for determination of the central issue, namely, whether, under the circumstances in this case, appellant should have been afforded a hearing with an opportunity to offer evidence in support of her motion for a new trial, are as follows:

Appellant was convicted on June 24, 1977, of theft of property, in violation of Ark. Stat. Ann. § 41-2203 (Repl. 1964) and her punishment was fixed at eight years in the State Department of Correction.

A motion for a new trial was filed on August 3, 1977, based on an allegation of incompetency of counsel; and on September 2, 1977, after a hearing conducted by the trial court, appellant's motion was denied. Appellant's notice of appeal was filed on September 13, 1977.

During the month of May, 1978, while appellant's appeal was pending before this Court, appellant's present counsel discovered that appellant had been undergoing psychological evaluation and psychotherapy, and, as a consequence, on May 9, 1978, appellant petitioned this Court to remand the case to the Circuit Court of Washington County to the end that a motion for a new trial, based on the insanity of the appellant, could be submitted to the trial court. On May 15, 1978, this Court issued its mandate granting appellant's motion to remand.

On May 25, 1978, appellant filed her motion for a new trial based on newly discovered evidence with the trial court. On June 19, 1978, the State filed its response, with a letter attached from the Mental Health Services Division of the Department of Social and Rehabilitation Services dated December 6, 1977, addressed to Judge William Kirby relative to case number 77-1890, pending in the Pulaski County Circuit Court, finding defendant without psychosis.

On June 29, 1978, a hearing was conducted on appellant's motion for a new trial. [1] During the hearing, the following pertinent exchange took place between the trial judge and counsel for appellant:

---

[1]The record before us reflects that on June 28, 1978, present counsel for appellant received a telephone call from the office of the trial judge advising counsel that the trial court would take up appellant's motion for a new trial at 1:00 p.m. o'clock on the following day, June 29, 1978.

During an exchange between the trial judge and counsel during the hearing, regarding the short notice received by counsel, counsel stated that he had planned to call witnesses, a psychiatrist and a psychologist who resided at Fort Smith to testify in the proceedings. However, the trial judge stated that he had not been advised that counsel wanted to offer testimony until the morning of the scheduled hearing. However, the trial court did recall receiving a telephone call approximately two weeks prior to the scheduled hearing from one Greg Smith, an associate of counsel of record for appellant, stating "that he would like to be present when I acted on the motion."

"THE COURT: 'Patricia Parker'. In the first place, I think that is where the sanity ought to be determined, in Little Rock. I think, as far as this Motion for New Trial, you have got to show due diligence and Mr. Baker is not a witness here. There is no mention made to the Court anywhere in the transcript of insanity or wanting to have her checked at the Ozark Guidance Center, and she knew about this other experience, and why she didn't tell Mr. Baker, her attorney here, I don't know. She didn't tell you about it. Didn't you file something here?

"MR. ROBINSON: Your Honor, after —.

. . .

"THE COURT: But at that time she didn't raise this, but she has been aware of this since 19 — whatever the time. I think it's not due diligence at this time to offer it at this late hour. She had a good lawyer.

"MR. ROBINSON: Your Honor, there is no evidence in the record with respect to what the Court has just said. I mean, I would at least like to make a record with respect to due diligence.

"THE COURT: All right. What is it? Are you going to put her on the stand?

"MR. ROBINSON: Your Honor, may I discuss this?

"THE COURT: Well, of course. You can put on any testimony you want. I am just taking your own affidavit of your own doctor here in which he says she had been treated back then and no mention was made to her attorney nor anybody else.

. . .

"THE COURT: You've got to show due diligence, why that wasn't brought out. That's my point.

"MR. ROBINSON: Your Honor, of course as the Court is aware, one of our points with respect to asking for new trial before was incompetency, you know, counsel had not properly defended —.

"THE COURT: But there was nothing said about her incompetency. She was there. She talked to you about it. Did she tell you that she was incompetent, trouble before?

"MR. ROBINSON: No, sir, she did not.

"THE COURT: Did you have any reason to think she was from her actions?

"MR. ROBINSON: She didn't act in the least bit bizarre.

. . .

"MR. ROBINSON: We have now discovered that she probably is. We have a report—

"THE COURT: I'm going to overrule it, and let you fight this out in Little Rock. The Supreme Court may hold this in abeyance, but that is the place where you can — it's already pending there. So let the Court there decide whether she's competent.

"MR. ROBINSON: Your Honor, I'd still like to make a record.

"THE COURT: Well, what else do you want to make? Do you want to put her on the stand?

. . .

"THE COURT: Talk with her and let's get going.

. . .

"THE COURT: Let me say this, in fairness to you,

what my policy is. If it's your desire to enter a plea of Not Guilty by Reason of Insanity at this time, my policy is that it is not bailable. In other words, if she thinks she's insane, I don't want her running around the streets. She would have to go to the State Hospital. I just want you to know my policy. Anybody, in a criminal case, pleading insantiy — automatically there is no bail. Now, I don't know what the policy in Little Rock is. I just want you to understand before you go farther.

.   .   .

"THE COURT: — Unless you want to put some testimony on, I'm going to overrule it. I have told you that. Go ahead with your testimony. On the fact (sic) of this there hasn't been shown to be due diligence. Right on the fact (sic) of it, the affidavit from your doctor. I'm just telling you that. I don't want you to be misled.

.   .   .

"THE COURT: — She can put anything she wants in the record.

"MR. ROBINSON: Excuse me, Your Honor, if she were incompetent —.

"THE COURT: Now, don't argue about it. If you want to put her on the stand, do it. I have told you.

"MR. ROBINSON: All right. Please take the stand, please, Mrs. Parker.

"THE COURT: If she pleads insanity here, Not Guilty by Reason of Insanity, I'm going to put her in jail and send her to the State Hospital, and you can go to the Supreme Court if you want to, because that is my policy all through the years. If a person thinks she's crazy, I don't think she ought to be at liberty to prey on the public, and it's proper to protect the public. So it's your business; go ahead. I don't know what Little Rock's policy is on it, their approach or how they feel about it.

"MR. ROBINSON: Your Honor, under that pronouncement of the Court, I don't dare put her on the stand. Mrs. Parker, step down."

The trial court entered an order overruling appellant's motion for a new trial. On July 6, 1978, appellant gave notice of appeal from the trial court's order.

For reversal, appellant contends that the trial court abused its discretion in overruling appellant's motion for a new trial.

Ark. Stat. Ann. § 43-2704 (Repl. 1977) provides in relevant part:

"Prior to the time fixed to file a notice of appeal, a person convicted of either a felony or misdemeanor may file a motion for a new trial, . . . *If requested or found to be necessary, the trial court shall promptly designate a date certain to take evidence,* hear and dispose of all matters that are presented. . . . " (Emphasis added)

Ark. Stat. Ann. § 43-2203, in material part, provides:

"The court in which a trial is had upon an issue of fact, may grant a new trial, when a verdict is rendered against the defendant, by which his substantial rights have been prejudiced, upon his motion, in the following cases:

. . .

"Sixth. Where the defendant has discovered important evidence in his favor since the verdict. . . . "

It is plain from the above statutory provisions that unless a party requests an evidentiary hearing in connection with his motion for a new trial, it is discretionary with the trial court as to whether a hearing should be afforded in order to receive evidence in support of the motion; and, of course, this Court will not reverse the action of the trial court unless the trial court has abused its discretion. *Newberry* v. *State,* 262 Ark. 334, 557 S.W. 2d 864.

In the instant case, the record reflects that on the date scheduled by the trial court for a hearing on plaintiff's motion for a new trial based upon newly discovered evidence, counsel for the appellant sought and received leave from the trial court, during the hearing, to offer oral evidence from the appellant in order to enable the trial court to determine if the purported newly discovered evidence of insanity of appellant was sufficient to justify a new trial, and whether appellant's prior and present counsel could have determined the existence of the alleged newly discovered evidence by the exercise of due diligence. However, as a consequence of an exchange between the trial judge and appellant's counsel resulting in the following admonition by the trial court, appellant declined to take the witness stand:

> "THE COURT: *If she pleads insanity here, Not Guilty by Reason of Insanity, I'm going to put her in jail and send her to the State Hospital, and you can go to the Supreme Court if you want to, because that is my policy all through the years.* If a person thinks she's crazy, *I don't think she ought to be at liberty to prey on the public, and it's proper to protect the public.* So it's your business; go ahead. I don't know what Little Rock's policy is on it, their approach or how they feel about it." (Emphasis added)

While we recognize that under Ark. Stat. Ann. § 43-1301 (Repl. 1977), when a trial judge has reason to believe that the defense of insanity will be raised on behalf of the defendant and will become an issue in the case, or shall be of the opinion that there are reasonable grounds to believe that the defendant was insane at the time of the alleged commission of the offense, the trial judge must postpone all the proceedings and shall ". . . either enter an order directing that the defendant undergo examination and observation by one or more qualified psychiatrists at a local regional mental health clinic or center, or shall commit the defendant to the Arkansas State Hospital for examination and observation," we are persuaded that any effort on the part of the trial court to exercise its authority under the provision of Ark. Stat. Ann. § 43-1301 (Repl. 1977) may have been premature inasmuch as it seems plain that appellant would not be required to change her plea until such time as the motion for a new trial had been grant-

ed. Appellant stood convicted before the trial court of the criminal charge of theft of property and had been sentenced to a term of eight years in the Arkansas Department of Correction and was endeavoring to secure a new trial. Moreover, it does not appear from the record before us that appellant, either during or prior to the hearing held by the trial court, was a menace to the public or to anyone as a consequence of being at liberty on bail.

Furthermore, it must be remembered that under Article 2, Section 8 of the Arkansas Constitution there are certain fundamental and basic rights guaranteed to each citizen of this state which have been more appropriately characterized as "Declaration of Rights" and the pertinent provision of this declaration provides:

> ". . . All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great."

It is clear that the trial court's admonition frustrated appellant's desire to offer evidence in support of her motion. Accordingly, we are persuaded that appellant should be afforded an evidentiary hearing in connection with her motion for a new trial based upon newly discovered evidence.

Finally, appellant argues rather strenuously that the trial court committed reversible error in denying her motion for a new trial predicated on the contention of incompetency of counsel at the trial level. After carefully reviewing the record before us, we are persuaded that there is substantial evidence to support the action of the trial court. The evidence falls short in warranting a holding that appellant's initial counsel's services reduced the proceeding to a farce, a mockery of justice and shocking to the Court. It must be remembered that effective assistance of counsel does not equate with success. The mere showing of improvident strategy, or bad tactics is not sufficient to establish that defendant was denied effective assistance of counsel since counsel is accorded broad latitude in exercising his discretion and judgment. *Haynie v. State,* 257 Ark. 542, 518 S.W. 2d 492;

*Franklin and Reid* v. *State,* 251 Ark. 223, 471 S.W. 2d 760. *See also: Pinnell* v. *Cauthron,* 540 F. 2d 938 (8th Cir. 1976).

This case is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.